UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RENTCHECK HOLDINGS, INC., MARCO NELSON, AND LYDIA WINKLER | CIVIL ACTION NO.: |
| Plaintiffs, | JUDGE: |
| VERSUS | MAGISTRATE: |
| AUSTIN SHERMAN | **JURY DEMAND REQUESTED** |
| Defendant. | |

**RENTCHECK HOLDINGS, INC., MARCO NELSON, AND LYDIA WINKLER'S COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs, RentCheck Holdings, Inc., Marco Nelson, and Lydia Winkler, bring this Complaint for Declaratory Relief against Defendant Austin Sherman and allege as follows:

**OVERVIEW**

1. In mid-2018, Nelson and Winkler offered Sherman an ownership stake in a startup company. The company was then known as RentCheck, LLC (later converting to RentCheck Holdings, Inc.). It had no bank account, no assets, and all the startup costs were paid for by Nelson and Winkler personally. Sherman, who was occupied running his own separate company at the time, rejected the ownership offer. Nelson and Winkler then offered Sherman a consultant position with the company. Because the company had no assets, Sherman would have received non-voting shares for his work. In June 2018, Sherman rejected the consultant offer and did not communicate with Nelson, Winkler, or the company for the next three and a half years. During this time the company began to attract investment and media interest. On October 1, 2021, Biz New Orleans ran a story on the company. By October 14, 2021, Sherman had hired a lawyer, demanded an ownership stake in the company, alleged that he owned the trademark to RentCheck, and insisted

- 1 -

that the company stop advertising its story unless it advertised that the company was Sherman's idea.

## PARTIES

2. Plaintiff, RentCheck Holdings, Inc., is a Delaware corporation with its principal place of business in New Orleans, Louisiana. RentCheck Holdings Inc.'s predecessor was known as RentCheck, LLC. RentCheck, LLC's predecessor was known as Imperent, LLC.

3. Plaintiff Marco Nelson is an individual citizen of the state of Louisiana, domiciled in New Orleans, Louisiana.

4. Plaintiff Lydia Winkler is an individual citizen of the state of Louisiana, domiciled in New Orleans, Louisiana.

5. Defendant Austin Sherman, is an individual citizen of the state of Louisiana, domiciled in New Orleans, Louisiana.

## JURISDICTION AND VENUE

6. This Court has federal question subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as Plaintiffs seek a judgment declaring their rights to a federally registered trademark under 15 U.S.C. § 1051 *et seq* and under the Lanham Act, 15 U.S.C. 1125(a)(1)(B).

7. The Court has supplemental subject-matter jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because it is a judicial district in which the Defendant resides and in which a substantial part of the events or omissions giving rise to the claim occurred.

## FACTS

**RentCheck's Business and Mark**

9. RentCheck Holdings, Inc. developed and owns software that helps rental property owners and tenants share information about the move-in or move-out condition of the property, report maintenance issues, report damages, deductions, and track security deposits.

10. RentCheck Holdings, Inc. is the owner of the federally registered trademark "RENTCHECK" (Registration number 6037775). The trademark application was filed March 29, 2018, published for opposition on June 18, 2019, and registered (without opposition) on April 21, 2020.

**RentCheck's Origins**

11. Marco Nelson has owned and managed rental properties in Louisiana and other states since at least 2006. Nelson also is a mobile application developer.

12. Over the years, Nelson had experienced many issues tracking security deposits and the condition of his rental properties. As a successful application developer, he conceived the idea that became RentCheck.

13. In 2016, Nelson discussed this idea with his friend Austin Sherman. Like most renters or property owners, Sherman also knew people who experienced problems with their security deposits and thought the application was a good idea.

14. At the time, Sherman was the successful founder of a beverage company called Big Easy Bucha. Nelson and Sherman informally discussed the idea throughout 2016. During that time, the two discussed the name RentCheck, but the trademark was not available.

15. In 2017, Nelson met Winkler while the two attended the MBA program at Tulane University. Winkler also had experienced security deposit-related issues and quickly became involved with the company.

16. Nelson and Winker continued to seek input from Sherman, but he became less and less responsive as his own company began to experience success.

**Sherman Withdraws From RentCheck and Rejects Its Offers**

17. By the second to third quarters of 2018, Nelson and Winkler decided that they wanted to pursue the idea full time and began to formalize the company and entered start-up company competitions to secure funding. During this time, the trademark to the name RentCheck became available, the company changed its name to RentCheck, LLC, Nelson filed a trademark application for the name, and the company drafted an operating agreement that listed the three individuals as owners.

18. After failing to secure funding in one competition (Y-Combinator), Sherman withdrew from any association with RentCheck and rejected the ownership offer.

19. In June 2018, Sherman was then extended a consulting offer. Sherman "respectfully decline[d]" that offer and instead opted only "to be available as a friend" to Mr. Nelson and Ms. Winkler in their efforts to get the RentCheck, LLC off the ground. Sherman did not have the time or desire to get involved with Rentcheck, LLC because he was busy running his own company.

20. Nelson and Winkler did not hear from Sherman for the next three and a half years.

**RentCheck Attracts Investors and Media Interest**

21. In 2020 and 2021 the company grew and attracted investment and media interest.

22. On October 1, 2021 Biz New Orleans ran a story on the company describing its history and growth.

**Sherman Claims Ownership in the Trademark and the Company**

23. On October 14, 2021, just days after publication of the Biz New Orleans article, Nelson, Winkler and RentCheck Holdings received a demand letter from Sherman.

24. The letter states that "Mr. Sherman owns the intellectual and media rights to the current business name and logo which RentCheck Holdings, Inc. is currently using." It further demanded that the company cease and desist using the RentCheck name and logo. Further, the letter accused Nelson, Winkler, and the RentCheck Holdings, Inc. of falsely advertising the corporate history and Sherman's contributions. Finally, he demanded an ownership interest in the company.

25. Sherman sent this letter, accusing Nelson and Winkler of "falsif[ing] the story of the company," to various RentCheck investors and to at least one person who has no individual involvement as an investor or otherwise in RentCheck.

## CAUSES OF ACTION

### COUNT ONE
### DECLARATION OF NO TRADEMARK VIOLATIONS UNDER 15 U.S.C. § 1051 ET SEQ

26. Paragraphs 1-25 are incorporated by reference as if fully stated herein.

27. Sherman has claimed that he owns the intellectual property and media rights to RentCheck's current business name and logo and has demanded that RentCheck cease and desist using this trademark and/or trade name.

28. Further, Sherman has alleged that RentCheck's continued use of this intellectual property constitutes willful trademark infringement and has threatened to pursue legal action against RentCheck on this basis.

29. An actual, present, and justiciable controversy has arisen between Sherman and RentCheck concerning RentCheck's right to continue using its name and logo. *See* 28 U.S.C. § 2201.

30. RentCheck seeks a declaratory judgment from this Court that its current use of the RentCheck trade name and logo does not constitute trademark infringement. *See* 15 U.S.C. § 1051 *et seq.*

## COUNT TWO
### DECLARATION OF NO LANHAM ACT VIOLATIONS UNDER 15 U.S.C. § 1125(A)

31. Paragraphs 1-30 are incorporated by reference as if fully stated herein.

32. The statements attributed to Plaintiffs regarding the development and origin of RentCheck that are referenced in the Sherman demand letter are neither false nor misleading.

33. As such, the statements referenced in the Sherman demand letter have not deceived, and do not have the capacity to deceive, a substantial segment of RentCheck's potential customers or investors.

34. Alternatively, the statements referenced in the Sherman demand letter do not misrepresent the nature, characteristics, or qualities of RentCheck's services and therefore cannot form the basis of a Lanham Act claim.

35. Plaintiffs are entitled to a declaration pursuant to 28 U.S.C. § 2201 that the statements referenced in the Sherman demand letter, and any similar statements, do not violate the false advertising provision of the Lanham Act, 15 U.S.C. § 1125(a), and that Sherman cannot prove the required elements of a cause of action under the same.

## COUNT THREE
### DECLARATION OF NO OWNERSHIP

36. Paragraphs 1-35 are incorporated by reference as if fully stated herein.

37. Sherman's mere advice and de minimis involvement in the initial brainstorming period of RentCheck is not sufficient to confer authorship rights.

38. Defendant Sherman never made any financial contributions to RentCheck Holdings, Inc.

39. Defendant Sherman never owned any of the intellectual property, including but not limited to the trademarked name "RentCheck" currently in use by Plaintiffs.

40. When Plaintiffs offered Sherman a percentage of equity in RentCheck LLC, Sherman declined, explaining that he would no longer be an advisor to the entity, instead serving only in the limited role as a "friend" of Plaintiffs.

41. Despite this, Sherman demands financial compensation and ownership rights in the current corporation, RentCheck Holdings, Inc. This demand presents an actual, present, and justiciable controversy.

42. Sherman does not own any percentage of RentCheck Holdings, Inc. and is not entitled to any financial compensation related to Plaintiffs' business.

43. Accordingly, Plaintiffs seek a declaration from the Court that Sherman is not an owner of RentCheck Holdings, Inc. and that he has no right, title, or interest in the trademarks, intellectual property, or any other business assets of RentCheck Holdings, Inc.

### COUNT FOUR
### DEFAMATION

44. Paragraphs 1-43 are incorporated by reference as if fully stated herein.

45. Sherman did not merely send his October 14, 2021 demand to Plaintiffs. To the contrary, Sherman copied others on the letter to Plaintiffs, thereby publishing his untrue accusations that Plaintiffs have "falsified the story of the company's founding."

46. Sherman is well-aware that these statements are untrue. By their very nature these accusations harmed Plaintiffs' personal and professional reputations.

47. In the alternative, by including persons who are not Plaintiffs on this communication, Sherman willfully and maliciously spread these defamatory allegations with an intent to harm Plaintiffs.

48. Such actions constitute defamation and defamation *per se* and Plaintiffs are entitled to recover any damages they have sustained or they will sustain, because of Sherman's defamatory statements.

## COUNT FIVE
## INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

49. Paragraphs 1-48 are incorporated by reference as if fully stated herein.

50. As detailed above, in including RentCheck's investors on the October 14, 2021 demand letter, Sherman sought to dissuade the copied individuals from partnering or otherwise engaging with Plaintiffs or RentCheck. This communication was not merely motivated by Sherman's baseless claim to financial compensation, but also his personal spite and ill will against Plaintiffs.

51. By including these current and potential investors on the demand letter, Sherman maliciously and improperly attempted to deter these investors and their business entities from future business relations with Plaintiffs.

## REQUEST FOR JURY

52. Plaintiffs pray for a jury trial of all matters herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that Defendant Austin Sherman be cited to appear and answer, and Plaintiffs respectfully request that the Court enter Judgment against Austin Sherman as follows:

1. Issue a declaration that Plaintiffs' current use of the RentCheck trade name and logo does not constitute trademark infringement;

2. issue a declaration that the statements referenced in the Sherman demand letter, and any similar statements, do not violate the false advertising provision of the Lanham Act, 15 U.S.C. § 1125(a);

3. issue a declaration that Defendant, Austin Sherman, does not own any portion of RentCheck Holdings, Inc.;

4. award Plaintiffs damages they have sustained or will sustain, because of Sherman's defamatory statements;

5. award Plaintiffs damages caused by Defendant's intentional interference with their business relations;

6. award Plaintiffs reasonable attorneys' fees and cost pursuant to 5 U.S.C. §552(a)(4)(E); and

7. grant all such other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/John W. Joyce*
Stephen H. Kupperman, 7890
John W. Joyce, 27525 (T.A.)
Janelle E. Sharer, 37305
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2350
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701
skupperman@barrassousdin.com
jjoyce@barrassousdin.com
jsharer@barrassousdin.com
*Attorneys for Plaintiffs, RentCheck Holdings, Inc., Marco Nelson, and Lydia Winkler*

{1807926_1}